UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN L. STANLEY, | ) | CASE NO.: 5:15CV1576 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MICHELE MILLER, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Pursuant to 28 U.S.C. § 2254, Petitioner Steven L. Stanley ("Petitioner"), a prisoner in custody at the Belmont Correctional Institution, is challenging his January 2015 parole revocation related to his Stark County, Ohio Court of Common Pleas convictions and sentences for two counts of kidnapping, two counts of illegal possession of firearms in liquor permit premises, and two counts of having weapons while under disability.  ECF Dkt. #s 1, 8; ECF Dkt. #22-1 at 3-4.  On August 24, 2015, this case was referred to the undersigned for a report and recommendation.  For the following reasons, the undersigned recommends that the Court DISMISS the instant petition with prejudice:

**I.**    **SYNOPSIS OF THE FACTS**

The Ohio Fifth District Court of Appeals set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Fifth District Court of Appeals, the facts are:

> Basically, the conduct of the appellant that brought about the indictment is not in dispute. The appellant in the early morning hours of August 30, 1990, entered the Naborhood Inn in Alliance, Ohio, after last call and was told that by the owner, Sam Demchak. Appellant left and approximately one-half hour later returned and gained entrance by waiving[sic] a gun at the owner and flipping a badge. After entering, the appellant indicated that he was with the DEA and that he was tired of people selling drugs to children. The owner, his partner, and two customers were in the bar, and the appellant kept his gun trained on the owner during his tirade. Finally, he indicated he was "going to go over and bust your buddy across the street", meaning Louie's Night Club. He then left and went across the street to Louie's Night Club where he had

been previously. Actually, he was a semi-regular customer at that bar, but had been barred because of being a trouble-maker. Upon being barred, the appellant had threatened to kill the owner, Louis Cabassa. The appellant had been at that bar earlier in the evening and had been asked to leave, which he did. The appellant now returned after the bar had been closed, showed his badge and demanded to be let in. Once Cabassa unlocked the door, appellant burst in and put a cocked gun in his face. Various customers who were inside the bar attempted to dissuade the appellant, however, the appellant simply pointed the gun at them and refocused on Cabassa. The appellant told everyone to stay where they were and again, spoke about the drug scene and his duty to rid the neighborhood of drug sellers.

In the meantime, the police had been notified and were waiting for the appellant when he left the bar with the owner, holding a gun to the owner's head. The police told the appellant to drop the gun and get face down on the ground, which he did eventually.

*State v. Stanley*, No. 1994CA00025, 1995 WL 42522, at *1 (Ohio App. 5th Dist. Jan. 17, 1995).

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On September 30, 1996, the Stark County Court of Common Pleas journalized an entry accepting Petitioner's guilty pleas to two counts of kidnapping in violation of Ohio Revised Code ("ORC") § 2905.01, two counts of illegal possession of firearms in liquor permit premises in violation of ORC § 2923.121, and two counts of having weapons while under disability in violation of ORC § 2923.13. ECF Dkt. #22-1 at 3-4. The trial court sentenced Petitioner to an indefinite term of not less than 7 and no more than 15 years of imprisonment for each count of kidnapping, a determinate term of 1 year of imprisonment for each illegal possession of a firearm conviction, and 1 year terms of imprisonment on each weapons under disability conviction, with each sentence to run concurrently with the others. *Id*.

On August 26, 2003 a certificate of parole/release authorization form was issued which informed Petitioner that his parole would begin on November 3, 2003 upon his release from prison and would continue for not less than one year when he became eligible for final release consideration if he maintained satisfactory compliance and adjustment. *Id.* Petitioner was instructed to report to Oriana House upon his release from prison. *Id*. Conditions of supervision were reviewed with Petitioner, but he refused to sign the form outlining those conditions as he wanted to "max out" his remaining sentence. *Id*. at 8-9; ECF Dkt. #8 at 9. A form outlining a waiver of

extradition upon parole or post-release control was also reviewed with Petitioner, but he refused to sign it. ECF Dkt. #22-1 at 10. The waiver of extradition form stated that Petitioner agreed to reside and remain in Ohio unless he was granted written permission by the Ohio Adult Parole Authority ("OAPA") to reside in another state and he agreed to abide by all of the other lawful conditions of his supervision. *Id.* The form explained that if Petitioner left Ohio without permission, he would be considered a fugitive from justice, he was waiving all of his rights to extradition proceedings, and he would be returned to Ohio to serve the remaining portion of his sentence as determined by the Ohio Adult Parole Board ("OAPB"). *Id.*

On November 4, 2003, one day after he was released, Petitioner was declared a parole violator-at-large ("PVAL") after he failed to report to Oriana House as instructed, failed to reside at the residence approved by the OAPA, and failed to report to his supervising officer as instructed. ECF Dkt. #22-1 at 18-21. Petitioner was later arrested in Oregon on July 27, 2012 and on September 12, 2012, he was released from custody and given instructions to report to the Akron OAPA on or before October 11, 2012, which was extended to October 25, 2012. *Id.* at 24-25, 43. However, Petitioner never reported and his whereabouts were considered unknown. *Id.* at 24. Accordingly, Petitioner was restored to being a PVAL. *Id.* at 22-25. Petitioner's Akron Parole Officer indicated that Oregon had released Petitioner from custody after October 25, 2012, and since that time until his Oregon arrest on May 5, 2014, she had received many phone calls from Portland, Oregon residents complaining that Petitioner was a menace to the community. *Id.* at 43.

Accordingly, Petitioner was arrested in Oregon on May 5, 2014. ECF Dkt. #22-1 at 30, 43. On July 31, 2014, Petitioner filed a petition for a writ of habeas corpus in the Multnomah County Circuit Court of the State of Oregon. *Id.* at 62. Petitioner asserted that the arrest and extradition documents issued by the State of Oregon were untimely and not in order because the State of Ohio knew Petitioner's whereabouts prior to February 17, 2012 as it had informed the Social Security Administration ("SSA") that the Ohio APA refused to extradite Petitioner and carry out the remainder of the original warrant. *Id.* Petitioner asserted that he was therefore not a fugitive because he did not move or leave the State of Ohio without permission and he had continuously resided in Oregon since 2004 and maintained regular contact with the OAPA by phone and mail.

Id.  He also asserted that he regularly provided the OAPA with current information of his location, employment status, medical status, tax returns, and supplemental security income clam.  *Id.* at 62-63. Petitioner stated that all of these updates "resulted in OADA Fugitive Coordinator, Rick Griffin advising him to 'stay tight as the statute of limitation was going to run in November 2013.'" *Id.* at 63.  Petitioner attached a copy of the SSA decision indicating that his impairments equaled a Listing under the relevant regulation but Petitioner received no benefits because benefits were barred due to an outstanding warrant issued by the State of Ohio on November 4, 2003.  *Id.* at 72.

In his reply memorandum in support of his state habeas corpus petition, Petitioner explained that the OAPA and the FBI knew that he was leaving Ohio for Oregon in 2003 and he regularly maintained contact with both agencies thereafter.  ECF Dkt. #23-1 at 65.  Petitioner alleged that he was released early from prison in November of 2003 in part because of a federal lawsuit he had filed against the Ohio Department of Rehabilitation ("ODR") and the OAPA concerning failure to provide him proper medical care and in part because he cooperated in the federal prosecution of an Alliance former Chief of Police.  *Id.* at 65.  He further asserted that in September 2012, the OAPA withdrew its warrant upon his agreement to voluntarily return to Ohio, but he was unable to return because he was medically unfit to travel other than by plane and he could not afford a plane ticket and OAPA would not help him pay for a flight.  *Id.* at 66.

On September 17, 2014, the Circuit Court for the State of Oregon in Multnomah County denied Petitioner's writ of habeas corpus concerning Ohio's extradition warrant, finding that while he alleged issues relating to due process violations, Oregon was not the proper state to determine such issues and the only relevant issue before that court was that of a valid extradition warrant from Ohio.  ECF Dkt. #22-1 at 27.  The court declared Petitioner a fugitive from Ohio.  ECF Dkt. #22-1 at 27.  On October 22, 2014, the OAPA issued a notification to Petitioner of his release violation hearing.  ECF Dkt. #22-1 at 29.  The violations were listed as failing to keep his supervising officer informed of his residence and his place of employment since November 4, 2003, being in the state of Oregon without permission on May 5, 2014, and failing to report to his supervising officer as instructed as of November 4, 2003.  *Id.* at 29-30, 42-43.  Petitioner signed a form indicating that he did not request representation or counsel at his hearing.  *Id.*  He also received notice that the two

witnesses he had requested to appear at his hearing were not going to appear because one of the witnesses was no longer an employee of the State of Ohio and the other witness was unable to be more specifically identified. *Id.* at 32-34.

On December 30, 2014, the Oregon APA denied Plaintiff's request to transfer his parole supervision to Oregon pursuant to the Interstate Compact Agreement for Adult Offender Supervision. ECF Dkt. #22-1 at 51-54. The request was denied because Petitioner was not an employee of the business that he stated in his transfer request, he absconded supervision in Ohio and he had an active warrant in Multnomah, Oregon for charges of being a felon in possession of a firearm and reckless endangerment. *Id.* at 54. It was also noted that he failed to appear and a warrant was issued. *Id.*

After a hearing on January 14, 2015, the OAPA hearing officer recommended that Petitioner's parole be revoked because he had no viable placement in the State of Ohio as he had a number of medical conditions and was currently using a wheelchair, he had proven by his actions that he would not report to a halfway house in the State of Ohio, and he had a pending case in Oregon regarding a firearm. ECF Dkt. #22-1 at 40. The hearing officer also indicated that he had requested that the OAPA submit an application for interstate compact transfer to the State of Oregon but the request was denied. *Id.* The hearing officer recommended that Petitioner be incarcerated for a period of 12 months. *Id.* A revocation order was issued for Petitioner's parole. *Id.* at 45. On January 26, 2015, the OPB accepted the hearing officer's recommendation of 12 months of incarceration for the parole violations. *Id.* at 46-50.

### B. State Habeas Corpus Actions

Meanwhile, on November 20, 2014, Petitioner filed an pro se petitioner for a writ of habeas corpus in the Lorain County Court of Common Pleas. ECF Dkt. #22-1 at 55. Petitioner asserted that he was illegally held in custody because the request for extradition to Ohio was not timely made as the State of Ohio knew Petitioner's whereabouts at all times, including prior to February 17, 2012 when the OAPA informed the SSA that the OAPA refused to extradite Petitioner and carry out the remainder of the original warrant issued on November 3, 2003. *Id.* at 56. Petitioner asserted that he was not a fugitive as he gave notice to the OAPA of his whereabouts and he continuously resided

in Oregon since November of 2003.  *Id*. at 56.  Petitioner also asserted that he was not in violation of his parole because he had refused to sign the supervision conditions.  *Id.* at 57.  Petitioner alleged that his due process rights under the Fourteenth Amendment were therefore violated.  *Id*.

On January 22, 2015, Petitioner filed a motion to withdraw/dismiss his state habeas corpus petition, which was granted by the trial court.  ECF Dkt. #22-1 at 77.

On March 23, 2015, Petitioner filed a petition for a writ of habeas corpus in the Belmont County Court of Common Pleas in Ohio as he was now a prisoner in the Belmont Correctional Institution in St. Clairsville, Ohio.  ECF Dkt. #22-1 at 78.  Petitioner again alleged due process violations relating to his extradition, arrest, and imprisonment concerning parole violations and revocation that were all invalid.  *Id*. at 78-106.  The State of Ohio filed a motion for summary judgment, asserting that Petitioner failed to state a claim upon which habeas corpus relief could be granted because Petitioner was not entitled to immediate release from prison, his claims were not cognizable, and his claims lacked merit.  *Id*. at 197-209.  Petitioner filed a response brief.  *Id.* at 209.

On July 1, 2015, the Belmont County Court of Common Pleas granted the State of Ohio's motion for summary judgment and dismissed Petitioner's state habeas corpus petition with prejudice.  ECF Dkt. #22-1 at 228.

## III.    Federal Habeas Corpus Petition

On July 24, 2015, Petitioner executed the instant federal habeas corpus petition pursuant to 28 U.S.C. § 2254 and it was filed in the United States District Court for the Southern District of Ohio.  ECF Dkt. #8; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).  On August 10, 2015, the United States District Court for the Southern District of Ohio ordered Petitioner's federal habeas corpus petition transferred to this District.  ECF Dkt. #5.

In his petition, Petitioner raises the following grounds for relief:

| | |
|---|---|
| GROUND ONE: | Due Process violation |
| Supporting Facts: | Eleven year delay in Ohio issuing, executing their warrant and in the extradition of petitioner which he claims was an |

"unreasonable delay" and violated his due process rights under Fourteenth Amendment.

GROUND TWO:       Unreasonable Delay (Holding Revocation Hearing)

Supporting Facts:  A parolee has certain constitutional rights before a parole can be revoked and one such right is that a "revocation hearing must be tendered within a reasonable time after a parolee is taken into custody." *Morrissey v. Brewer* (1972), 408 U.S. 471, 488, 92 S.Ct. 2593, 2603-2604, 33 L.Ed. 484, 498; (other citations omitted).

GROUND THREE:     (Ineffective Assistance of Counsel, Revocation)

Supporting Facts:  "Mr. Griffon, the assigned/appointed by defendant OAPA's institutional Public Defender, by refusing to carry out his client's wishes and function as an 'active advocate', cannot foreclose review of non-frivolous constitutional claims and failure to do so "must constitute 'cause and prejudice' for any resulting default." *Jones*, 103 S.Ct. At 3315, *Fay v. Noia* (1963), 372 U.S. 391, at 439, 83 S.Ct. 822, at 849; (citations omitted).

ECF Dkt. #1.  On August 7, 2015, Petitioner filed the instant motion for subpoena duces tecum or discovery.  ECF Dkt. #3.  He also filed a motion for an in court hearing and/or conference.  ECF Dkt. #4.  Respondent filed opposition briefs to Petitioner's motions on September 3, 2015.  ECF Dkt. #s  16, 17.  Petitioner filed reply briefs on September 24, 2015.  ECF Dkt. #s 18, 19.

On October 30, 2015, Respondent filed an answer/return of writ.  ECF Dkt. #22.  On November 20, 2015, Petitioner filed a traverse.  ECF Dkt. #23.  On November 23, 2015, Petitioner filed a motion to renew his request for a hearing and for a subpoena duces tecum.  ECF Dkt. #24. On December 7, 2015, Respondent file an opposition brief to Petitioner's renewed requests.  ECF Dkt. #25.  Petitioner filed a reply brief on December 14, 2015 and on December 21, 2015, Respondent filed an opposition brief to Petitioner's motion for oral argument.  ECF Dkt. #s 27, 28. On January 4, 2016, Petitioner filed a reply to the motion for oral argument.  ECF Dkt. #29.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional

claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not an issue in this case as Respondent agrees that Petitioner's federal habeas corpus petition is timely filed. ECF Dkt. #22 at 6.

### B.   Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation

-8-

omitted).

Unless an exception applies, the Court must dismiss a petition for lack of exhaustion if it contains at least one issue that was not presented to the state courts so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). A state's *res*

-10-

*judicata* rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes.  *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 4, 2015, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

-11-

    (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

          (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

          (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

    The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

          1.    It '[applies] a rule that contradicts the governing law set forth in

-12-

[Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E. Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed

-13-

questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.    LAW AND ANALYSIS

For the following reasons, the undersigned recommends that the Court find that Petitioner's three grounds for relief are procedurally defaulted, noncognizable and/or meritless.

### A.    GROUNDS FOR RELIEF ONE AND TWO

As to Petitioner's first two grounds for relief, including his primary assertion that his federal due process rights were violated when the State of Ohio delayed issuing and executing its warrant and extradition order to Oregon, the undersigned recommends that the Court find that he has procedurally defaulted these grounds.

The undersigned first notes that an Ohio prisoner seeking to challenge the OAPA must file a petition for a writ of mandamus pursuant to Ohio Revised Code § 2731.01. *Williams v. Perini*, 557 F.2d 1221, 1223 (6th Cir. 1977). However, an Ohio prisoner can seek state habeas corpus relief if extraordinary circumstances are present. *See*, *e.g., State ex rel. Jackson v. McFaul*, 652 N.E.2d 746, 748 (Ohio 1995) (per curiam). In order to proceed in federal habeas corpus, however, in either instance, a petitioner must have exhausted his state court remedies. *Brewer v. Dahlberg*, 924 F.2d 328 (6th Cir. 1991). A petitioner commits a procedural default "by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Carter v. Mitchell*, 693 F.3d 555, (6th Cir. 2012 ), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006) (quoting *Boerckel*, 526 U.S. at 848 (internal quotation marks omitted)). In order to avoid

-14-

the procedural default of a ground for relief, a federal habeas petitioner "must have exhausted his or her remedies in state court." *Carter*, 693 F.3d at 563-564, citing *Boerckel,* 526 U.S. at 842 and 28 U.S.C. § 2254(b)(1)(A). A federal claim is considered exhausted once it has been "fairly presented" at the first possible opportunity within "one complete round of the State's established appellate review process." *Carter*, 693 F.3d at 564, quoting *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).  An unexhausted claim is procedurally defaulted if the petitioner fails to exhaust state court remedies and state law no longer allows the petitioner to raise the claim. *Carter*, 693 F.3d at 564, citing *Williams*, 380 F.3d at 967.

In addition, when "a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.2009).  Likewise, the failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *Boerckel*, 526 U.S. at 848.

In the instant case, Petitioner never appealed the trial court denials of his state habeas corpus petitions to the Ohio appellate court or the Ohio Supreme Court.  It is clear that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. While the United States Supreme Court has held that a federal habeas corpus petitioner need not exhaust any and all remedies that are potentially available to him in state court, the Court explained that a petitioner must "exhaust those remedies that comprise a state's 'standard,' 'established,' 'normal' appellate review process." *Id*., citing *Wilwording v. Swenson*, 404 U.S. 249, 249-50, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971)( per curiam).  Petitioner did not do so in this case.  Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his first two grounds for relief.

The Court can still consider Petitioner's constitutional arguments if Petitioner shows cause to excuse his procedural default and resulting prejudice, or if the Court determines that  it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one

who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray*, 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

Here, Petitioner has not advanced any reasons to excuse his failure to present direct appeals or appeals to the Supreme Court of Ohio. Petitioner raises the ineffectiveness of counsel, but alleges counsel's ineffectiveness only at trial, which the undersigned addresses below. ECF Dkt. #8 at 20. Petitioner further alleges OAPA interference with the refiling of his state habeas petition that he withdrew, but this fails to explain his failure to appeal the trial court determinations on these petitions to the Ohio appellate court or the Supreme Court of Ohio. *Id.* at 8. Petitioner also asserts that he never agreed to be paroled and he was not informed of conditions of supervision as he refused to sign the conditions of supervision. *Id.* at 11. However, an OAPB document indicating a hearing date of July 14, 2003 indicates that Petitioner was very "vague" at the hearing and "did not say he would not go out on parole - - when asked if he was declining to leave on parole - - inmate stated not today - - inmate stated he could not wait until his Max." ECF Dkt. #1-6 at 1. In addition, the conditions of supervision form indicates that Petitioner refused to sign it, but it also indicates that he read or had read to him the conditions of supervision. *Id.* at 3. Petitioner further asserts that he thought that he was being released from prison due to settlement of federal lawsuits he had instituted and due to his cooperation in a federal criminal case. ECF Dkt. #8 at 11. However, he has produced no evidence supporting such a theory, and in fact, one of those cases went to jury trial and the court entered a directed verdict, another case ended in a granting of summary judgment in the defendant's favor and a third was dismissed by Petitioner without prejudice. ECF Dkt. #1-23 at 3. There is no evidence that parole was a part of any of those cases. Moreover, Petitioner has produced no new

-16-

evidence to carry his burden of showing actual innocence or a fundamental miscarriage of justice.

Further, the undersigned recommends that the Court decline to review Petitioner's first two grounds for relief to the extent that he raises in these grounds for relief issues concerning the OAPB parole revocation decision or the parole revocation proceedings themselves. Such challenges to errors in Ohio's interpretation of its own laws or procedures concerning parole, or violations of state law, procedures or rules concerning parole, are not cognizable in federal habeas corpus review. *See Simpson v. Jones*, 238 F.3d 399, 406-407 (6th Cir. 2000).

Should the Court find that exhaustion and procedural default are not barriers to federal habeas corpus review, the undersigned alternatively recommends that the Court find no merit to Petitioner's assertions concerning alleged due process violations by the State of Ohio in delaying the issuance and execution of the arrest warrant, extradition warrant, and a parole revocation hearing. The undersigned notes that there is no constitutionally protected right to release on parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). A state is not required to establish a parole system and the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id*. at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth*., 929 F.2d 233, 235 (6th Cir. 1991).

Contrary to Petitioner's assertion, parole revocation is not part of the stages of criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). However, minimum requirements of due process are provided to a parolee facing parole revocation. *Morrissey v. Brewer*, 408 U.S. 471, 479-480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey,* 408 U.S. at 479-480, the United States Supreme Court recognized that a parolee has a protected liberty interest in continued release on parole, subject to the conditions of that release, and due process requires an informal hearing to assure that a parole violation is based upon accurate facts and knowledge of the parolee's behavior. *Id*. The minimum requirements of due process as to a parole revocation hearing are the following, among other things:

-17-

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached"hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

In *Moody v. Daggett* , 429 U.S. 78, 87, 97 S.Ct. 274, 278-279, 50 L.Ed.2d 236, 244 (1976), the United States Supreme Court held that a federal parolee was not deprived of due process when arrested for committing new federal crimes while on parole when a violation warrant was lodged against him but no violation hearing was held until he served his new federal sentence.   While acknowledging that a revocation hearing must be held within a reasonable time after the parolee is taken into custody, as held in *Morrissey*, 408 U.S. at 488, the Supreme Court held that execution of the violation warrant and custody under that warrant was the operative event triggering any loss of liberty attendant upon parole revocation. In order words, the Court held that under federal due process principles, "the loss of liberty as a parole violator does not attach until the parolee is taken into custody under the warrant." *Moody*, 429 U.S. at 87.

Accordingly, in the instant case, the *Morrissey* requirements did not attach until the State of Ohio took Petitioner back into custody on September 27, 2012.  ECF Dkt. #22-1 at 29.  Petitioner was originally declared a PVAL on November 4, 2003 and thereafter restored to parole while at large beginning on September 12, 2012.  ECF Dkt. #22-1 at 22.   He was released from Oregon's custody on September 13, 2012 with written instructions to report to his parole officer in Akron, Ohio on or before October 11, 2012, which was extended to October 25, 2012.  ECF Dkt. #22-1 at 25, 40. However, Petitioner was subsequently declared a PVAL effective October 31, 2012 when he failed to appear for Ohio parole proceedings.  *Id.* at 26.  He was then arrested on criminal charges on May 5, 2014 in Oregon and returned to Ohio on September 27, 2014.  *Id*. Petitioner was hand-delivered a written notice of a parole violation hearing which he signed on October 7, 2014 and that notice outlined the alleged violations against him and the rights that he had regarding the hearing, including his rights to be heard in person, to present witnesses and documentary evidence, the right to confront and cross-examine witnesses, the right to request representation by counsel, the right to appear before

a parole board hearing officer, the right to request a continuance, and the right to a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.  ECF Dkt. #22-1 at 29.  Petitioner's original hearing date was scheduled for October 22, 2014, less than one month after he returned to Ohio, but it was subsequently rescheduled upon agreement until January 14, 2015.  ECF Dkt. #22-1 at 45.  Under federal law, Ohio committed no due process violation in deferring the execution of its warrant  after Petitioner served his Oregon sentence and Ohio complied with the *Morrissey* requirements upon Petitioner's return to Ohio. *Alexander v. Warden, Bell Cty. Forestry Camp*, No.:12-CV-80-KKC-HAI, 2013 WL 875907, at *5 (E.D. Ky. Feb. 7, 2013) report and recommendation adopted sub nom. *Alexander v. Kentucky Dep't of Corr.*, No. CIV.A. 12-80-KKC, 2013 WL 873315 (E.D. Ky. Feb. 27, 2013); *e.g., Moody*, 429 U .S. at 88; *see also Inmates' Councilmatic Voice v. Rogers*, 541 F.2d 633, 636 (6th Cir.1976) (The "APA should not be required to travel outside of Ohio and conduct parole revocation hearings in a foreign jurisdiction every time a parolee commits a new crime in another State. This would impose real inconvenience and hardship on the Board as well as subject the State to considerable unnecessary expense.... In our opinion APA is not required to hold a final parole revocation hearing until a reasonable time after it has obtained custody over the parolee by executing the detainer in Ohio and has returned him to the institution from which he was paroled.").  For these reasons, the Court should find that Petitioner's assertion of due process violations are without merit.

### B.  GROUND FOR RELIEF NUMBER THREE

In his third ground for relief, Petitioner alleges that his counsel was ineffective at the parole revocation hearing because he failed to raise mitigating factors in his defense such as the fact that he was not an absconder or fugitive and he failed to challenge the invalidity of the eleven year old warrant and extradition order of Ohio.  ECF Dkt. #8 at 25-29.  The undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief.

The undersigned notes that the Sixth Amendment constitutional right to counsel generally does not attach to parole revocation hearings.  *See Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 n. 5, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), citing *Gagnon*, 411 U.S. at 787.  However,

-19-

in some cases, the Due Process Clause requires appointed counsel in parole revocation hearings. *Gagnon*, 411 U.S. at 787. Counsel was appointed in Petitioner's parole revocation case. ECF Dkt. #22-1 at 40 and the Violation Hearing Notice of Findings as to Petitioner's parole revocation hearing indicate that Petitioner's counsel presented a mitigation statement at the hearing. ECF Dkt. #22-1 at 48.

Nevertheless, while Petitioner had appointed counsel and Petitioner raised counsel's alleged ineffectiveness in his second state petition for habeas corpus relief, he never appealed the trial court's denial of his petition to the Ohio appellate court or to the Supreme Court of Ohio. Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief unless he can show cause and prejudice to excuse his procedural default or a fundamental miscarriage of justice if the ground for relief is not reviewed. Petitioner fails to provide cause and prejudice to excuse the procedural default of this claim and he fails to demonstrate a fundamental miscarriage of justice if this ground for relief is not reviewed. Consequently, Petitioner has procedurally defaulted this ground for relief.

## VII.    PETITIONER'S OUTSTANDING MOTIONS (ECF DKT. #s 3, 4, 24, 26)

Based upon the undersigned's Report and Recommendation, the undersigned DENIES Petitioner's outstanding motions for: subpoena duces tecum or discovery (ECF Dkt. #3); in-court hearing and or conference (ECF Dkt. #4); to renew request for hearing and subpoena duces tecum (ECF Dkt. #24); and for hearing for oral arguments or briefs on exhaustion and procedural default issues (ECF Dkt. #26).

## VIII.   RECOMMENDATION AND CONCLUSION

For the above reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice (ECF Dkt. #s 1, 8). Consequently, the undersigned also DENIES Petitioner's outstanding motions for: subpoena duces tecum or discovery; in-court hearing

-20-

and/or conference; to renew request for hearing and subpoena duces tecum; and for hearing for oral arguments or briefs on exhaustion and procedural default issues.  ECF Dkt. #s 3, 4, 24, 26.


Date: February 22, 2016                          _____*/s/George J. Limbert*_____
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE


     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-21-